**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **WCR, INCORPORATED** | ) | **CASE NO.** |
| **2377 Commerce Center Boulevard** | ) | |
| **Fairborn, Ohio 45324,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **WESTERN CANADA HEAT** | ) | |
| **EXCHANGER, LTD.** | ) | |
| **6210 Davies Road NW** | ) | |
| **Edmonton, Alberta, Canada** | ) | |
| **T6E 4M9,** | ) | |
| | ) | |
| **and** | ) | **PLAINTIFF'S COMPLAINT** |
| | ) | |
| **EARL STROHSCHEIN** | ) | |
| **11241 156 ST NW** | ) | |
| **Edmonton, Alberta, Canada** | ) | **WITH JURY DEMAND ENDORSED** |
| **T5M 1Y2,** | ) | **HEREON** |
| | ) | |
| **Defendants.** | ) | |

NOW COMES Plaintiff WCR, Incorporated ("WCR"), by and through counsel, and

for its causes of action against Defendants, alleges and states as follows:

**<u>INTRODUCTION</u>**

1.     This is a complaint for damages for the orchestration of an international fraud

perpetrated by an individual named Earl Strohschein using several different companies to

circumvent contractual obligations within various distributor agreements with WCR.

2.     Mr. Strohschein engaged in a fraudulent scheme using companies he created

and controls to shift liabilities from one entity to another and to conceal purchases

prohibited by contractual commitments.  Mr. Strohschein began this scheme by creating

two Canadian companies with deceptively similar names - Western Canada Heat Exchanger, Ltd. ("WCHE") and Western Canada Plate Exchanger, Ltd. ("WCPE"). He then intermingled the businesses of the two to such an extent that they were indistinguishable.

3.    As set forth more fully below, when confronted with demands from WCR that Mr. Strohschein abide by the contracts his company had entered into, he fraudulently represented facts to WCR and then, less than a week later, created yet another Canadian company - Salarix, Industries Ltd. ("Salarix") - to continue his fraud on WCR.

4.    Finally, when one company—WCPE—was sued in this Court for breach of contract, Mr. Strohschein attempted to avoid liability by claiming the companies were separate despite years of operating them as one and the same.

## THE PARTIES

5.    Plaintiff, WCR, Incorporated, is a corporation organized and existing under the laws of the State of Ohio. WCR has its principal place of business at 2377 Commerce Center Boulevard, Fairborn, Ohio 45324.

6.    Upon information and belief, Defendant Western Canada Heat Exchanger, Ltd. ("WCHE") is organized and existing under the laws of Canada and has its principal place of business at 6210 Davies Road NW, Edmonton, Alberta T6E 4M9.

7.    Upon information and belief, Earl Strohschein is an individual who resides at 11241 156 ST NW, Edmonton, Alberta, Canada T5M 1Y2.

2

8.     Earl Strohschein identifies himself as the Owner of WCHE, runs its day-to-day operations, and has sent and directed numerous communications on its behalf to WCR in Ohio.  Strohschein is also the "President" of the nearly identically named WCPE.

## JURISDICTION AND VENUE

9.     This Court has original diversity jurisdiction over the subject matter of this controversy pursuant to 28 U.S.C. § 1332(a)(2), as Plaintiff and Defendants are "citizens of a State and citizens or subjects of a foreign state," respectively, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Ohio, as well as pursuant to R.C. 2307.382(A)(1), (4) and (6) and R.C. 2307.382(B), among others. In addition, WCHE agreed to be bound by a forum selection clause designating Courts in the Southern District of Ohio as the forum to resolve disputes under the contract.

11.     Unbeknownst to WCR until recently, since at least 2012 Defendant Earl Strohschein caused WCHE and WCPE to enter into contracts with WCR that constitute a continuing obligation in the State of Ohio, and specifically envisioned wide-ranging contacts with WCR in Ohio, exploiting WCR's production of industrial products for the financial and marketing/branding benefit of WCHE, WCPE and Earl Strohschein personally and as an executive of both companies.

12.     Acting in the capacity of a corporate agent, Strohschein caused WCHE to commit, and personally committed many of the acts constituting, fraud upon and specifically directed and aimed at WCR in Ohio as described more fully in this Complaint.

13.     WCHE entered into a contract with WCR pursuant to which WCHE intended to and did purchase custom made industrial products known as plate heat exchangers from WCR in Ohio.

14.     In addition to their actions described herein, WCHE and Earl Strohschein as its corporate agent consented to the Court's personal jurisdiction through the terms and conditions included in the contracts entered into by the parties.  Specifically, the terms and conditions contained on WCR's invoices provided as follows:

> 17. APPLICABLE LAW AND FORUM: This agreement and all disputes arising hereunder shall be governed by the laws of the State of Ohio without giving effect to the provisions thereof relating to conflict of laws and you expressly and irrevocably submit to the jurisdiction of the state or federal courts in such State which shall have sole and exclusive jurisdiction over any claim, suit, proceeding or action arising out of or related to this agreement.

15.     WCHE and Earl Strohschein, personally and as WCHE's corporate agent, communicated with WCR in Ohio on hundreds of occasions via telephone, letters, emails, texts, facsimile transmission and the like, many of which form the core of the allegations in this Complaint.

16.     This Court has personal jurisdiction over Earl Strohschein based on his creation of a continuing obligation in the State of Ohio, transmitting fraudulent statements to WCR in Ohio as set forth in this Complaint, causing the consequences of his fraudulent

statements in Ohio, and creating an obligation of WCHE, which he subsequently caused it to dishonor in Ohio.

<strong><u>FACTS</u></strong>

**A.     History of the Relationship between Plaintiff and Defendants**

17.     WCR is one of the leading manufacturers of industrial equipment known as plate heat exchangers and the parts and components used in them.  Plate heat exchangers are used in a wide variety of industries to heat and cool liquids.

18.     WCR is headquartered in the State of Ohio, but operates throughout the world. In some regions, WCR uses local distributors.

19.     WCR's use of local distributors requires an element of trust because, when proceeding in this manner, WCR is choosing to not invest in the territory, but rather to invest in the distributor.  When WCR uses a local distributor it relies on the distributor to sell the goods and services that WCR would otherwise be providing in the territory. WCR agrees with the local distributor that it will not enter that market itself except for existing "house accounts."

20.     In 2010, WCR and Earl Strohschein began discussing entering into an ongoing relationship in which Strohschein would become a distributor for WCR in Western Canada.  This resulted in the formation of a company known as Western Canada Plate Exchanger, Ltd ("WCPE").

21.     WCPE was formed on or about August 12, 2010 and Earl Strohschein is the President of WCPE.

22.     Beginning on July 1, 2010, WCR and WCPE entered into a series of service and distribution agreements that were renewed on a regular basis.  These agreements provided that WCPE was required to sell, use and install only plate heat exchangers, parts and gaskets purchased from WCR and WCR would provide discounts and support in exchange (these agreements are collectively referred to as the "Service Center Agreements").

23.     On June 12, 2017 Earl Strohschein signed the most recent Service Center Agreement on behalf of WCPE which had an effective date of April 3, 2017 (this agreement is referred to as the "Current Service Center Agreement").

**B.     The Fraudulent Use of a Deceptively Similar Company**

24.     After creating WCPE and entering into the first Service Center Agreement, on or about May 25, 2012, Earl Strohschein directed the formation of another company with a nearly identical name: Western Canada Heat Exchanger, Ltd. ("WCHE").

25.     Also in 2012, Earl Strohschein began communicating to WCR using the company name "Western Canada Heat Exchanger" instead of "Western Canada Plate Exchanger."  For example, on July 24, 2012, shortly after he caused WCHE to be created, Earl Strohschein sent an email to an application engineer at WCR in which he requested a quote for a new heat exchanger using an email signature with the name "Western Canada Heat Exchanger" even though the goods should have been sold under the Service Center Agreement that was in place at the time between WCR and "Western Canada Plate Exchanger."

26. The change in the use of company names was not immediately noticeable since the products being sold by WCR are plate heat exchangers and Strohschein merely directed the change in company names from "plate exchanger" to "heat exchanger."

27. In addition to using nearly identical names, Strohschein also caused both companies to fail to observe corporate formalities and distinctiveness, and this surreptitious intermingling continued and was ongoing during the course of dealings among WCPE, WCHE and WCR for several years. For example, on September 4, 2015, Strohschein sent an email to WCR's President in Ohio using an email signature from WCHE but an email address from WCPE. The intermingling of email accounts was a regular practice of Strohschein when operating WCPE and WCHE when communicating with WCR in Ohio, as well as in WCPE's and WCHE's branding and communications worldwide as one entity.

28. The intermingling of the companies continued with Strohschein causing invoices that were sent by WCR to WCPE to be paid from accounts controlled by him through WCHE. Invoices that were sent to WCPE by WCR were actually paid to WCR from accounts controlled by WCHE at Strohschein's direction.

29. The practice of creating and using two different companies with deceptively similar names was part of a fraudulent scheme perpetrated by Strohschein. Specifically, Strohschein caused WCPE to enter into the Service Center Agreements with WCR in Ohio, but then ordered goods using the WCHE name, which Strohschein then caused WCHE and WCPE to not pay for.

30. Another part of Strohschein's scheme of using multiple companies was his effort to overcome a restriction in each of the Service Center Agreements with WCR on

the ownership of competing businesses. Each of the Service Center Agreements, including

the Current Service Center Agreement, contained the following provision:

> 12. _Exclusivity and Non-Competition Provisions._ So long as this Agreement is in effect (and only so long as the Company is acting as an exclusive WCR Service Center in the Territory under this Agreement), neither the Company nor any individual or entity who is a shareholder of the Company shall engage, anywhere in the world, directly or indirectly, itself or as an agent, shareholder (excluding being the holder of stock which represents not more than a 1% interest in a publicly-held corporation), partner or in any other capacity whatsoever in any business involved directly or indirectly in any way and to any extent with the sale of products

7

> similar to the WCR Products or the provision of services similar to the WCR Related Services, except as WCR may, in its sole discretion, consent in writing in each instance.

31.     Strohschein has attempted to avoid this provision through the creation and

use of WCHE, among other things. More specifically, and as described in greater detail

below, Strohschein has used WCHE to purchase the same goods from other suppliers that

Strohschein agreed WCPE would purchase exclusively from WCR.

## C.     The Fraudulent Representations by Earl Strohschein

32.     In January 2017, WCR became concerned that WCPE was not complying

with its exclusive purchase obligations under the Service Center Agreements.

33.     On January 31, 2017, while attending the International Air-Conditioning,

Heating, Refrigerating Exposition in Las Vegas, Strohschein was questioned by WCR's

President and VP Sales, whom Strohschein knew to be operating through WCR's

headquarters in Ohio, about purchasing goods from suppliers other than WCR.    At that time, Strohschein falsely represented to WCR's President and VP of Sales that WCPE was not purchasing goods from a supplier in China.

34.    When questioned in January 2017, Strohschein also falsely represented by omission that he had not set up another company—WCHE—to circumvent any provisions that required the purchase of all plate heat exchanger parts from WCR.

35.    The fraudulent statements and fraudulent omissions were made for the purpose of inducing WCR's reliance, which reliance was justified.

36.    At the time these representations were made in Las Vegas, Strohschein was already using WCHE to purchase goods from suppliers other than WCR.  In addition, Strohschein did not tell WCR's President and Vice President that he had created WCHE to purchase goods from WCR and other suppliers specifically to avoid any of the restrictions that were in the Service Center Agreements.

37.    Around April 10, 2017, WCR advised Strohschein that it wanted to audit the books and records of WCPE.  The Service Center Agreements allowed WCR to conduct an audit of the books and records of WCPE to assure WCPE was complying with its exclusive purchase requirement in the Service Center Agreements.  Specifically, the audit provision of the Service Center Agreements between WCPE and WCR provided as follows:

13. _Audit._ During the term of this Agreement, WCR will have the right to audit all of the Company's books, records, procedures and operations at reasonable times but no more than two times in any twelve month period for the purpose of determining if the Company: (i) is selling outside the Territory in violation of this Agreement; (ii) is purchasing WCR Products from third parties in violation of this Agreement; (iii) is complying with the WCR Procedure Requirements and WCR's distribution policies; and/or (iv) if the Company is otherwise in breach of this Agreement. WCR will be responsible for all costs associated with such audit, unless such audit results in WCR discovering irregularities, in which event, the Company shall pay all WCR's costs associated with such audit.

38.     Strohschein and WCPE did not want to give WCR access to WCPE's books and records because doing so would reveal that Strohschein had created a separate entity and diverted purchases to WCHE.

39.     On April 17, 2017, Strohschein wrote a letter to WCR's President, Kim Andreasen, in Ohio. The letter was even sent on WCHE letterhead despite the fact that he was referring to a contract Strohschein now claims was solely between WCPE and WCR.

40.     Strohschein falsely represented in his April 17, 2017 letter that the "overall level of business activity in the territory" had dropped significantly and that this was the reason for WCPE's decline in sales and consequent decline in purchases from WCR. This statement was false because the real reason for the decline in purchases from WCR was Strohschein's diversion of purchasing opportunities to WCHE, rather than WCPE, and the purchase of goods from suppliers other than WCR.

41.     In addition, in his April 17, 2017 letter Strohschein represented that "we had an employee who overstepped his boundaries and ordered material from unauthorized suppliers." This statement was also false because Strohschein had actually already personally directed the purchase of goods from suppliers other than WCR.

42.     In justifiable reliance on Strohschein's April 17, 2017 letter, WCR continued to do business with Strohschein, WCPE, and WCHE.

43.     Also in justifiable reliance on Strohschein's representations in the April 17, 2017 letter, WCR entered into another Service Center Agreement, specifically the Current Service Center Agreement, which Strohschein signed on June 12, 2017, after having made the false representations to WCR.

44.     In justifiable reliance on the representations made by Earl Strohschein in January and April of 2017, WCR granted WCPE the exclusive right to be WCR's distributor in Western Canada, shipped goods to WCPE and WCHE, and otherwise did business with WCPE, WCHE and Earl Strohschein.

45.     Just four days after the April 17, 2017 letter to WCR, on April 21, 2017, Strohschein caused a new company to be formed in Canada to further circumvent the obligation to purchase from WCR.  That company was Salarix Industries, Ltd. ("Salarix").

**D.     Using the Fraudulent Scheme to Divert Purchases from WCR**

46.     WCR has since learned that Strohschein used WCHE to make purchases of products from suppliers that WCPE was contractually obligated to purchase from WCR under the Current Service Center Agreement.  Specifically, over the course of several years WCHE purchased numerous plate heat exchanger parts from a company in Auburn, WA known as Thermaline, Inc.  One example of these purchases occurred in connection with a quotation for plate heat exchanger plates dated June 16, 2017, just four days after Strohschein had signed the Current Service Center Agreement.

47.    In fact, not only did WCHE purchase products from Thermaline that should have been purchased from WCR, Earl Strohschein even directed Thermaline to send a trade show display to WCPE's address so it could sell products supplied by Thermaline and not WCR.

48.    WCR has learned of another company Strohschein directed purchases to instead of WCR.  That company is known as PHE Polymer, Engineering, LLC of Knoxville, TN ("PHE").

49.    Strohschein caused in excess of $200,000 in purchases to be made from PHE that should have been made from WCR using WCHE.

50.    Strohschein continued to divert purchases to Thermaline and PHE that should have been made from WCR until he created Salarix.

51.    Beginning in 2017, Strohschein directed Salarix to purchase goods from PHE as well.  In fact, the purchases from Salarix appear to have been much more significant and totaled approximately $600,000.

**E.    WCHE and WCPE Operated as One Until WCR Sought Damages in Litigation**

52.    WCR initiated a lawsuit in this Court in 2018 against WCPE for, among other things, the failure of WCPE to honor the exclusive purchase requirements in the Current Service Center Agreement. *See*, <u>WCR, Incorporated, vs. Western Canada Plate Exchanger Ltd.</u>, No. 3:18-CV-278, U.S. District Court for the Southern District of Ohio (the "Litigation").

53.    WCPE was the only named defendant in the Litigation because that was the entity identified in the Service Center Agreements and because it had used the name

"Western Canada Heat Exchanger" interchangeably with "Western Canada Plate Exchanger," and further because WCR had yet to fully discover the fraud committed by Earl Strohschein personally and through WCHE.

54.     After WCR commenced the Litigation against WCPE, WCPE refused to produce documents that would identify the purchases made by WCHE in order to circumvent the Current Service Center Agreement, now claiming the two companies were separate.

55.     In fact, unbeknownst to WCR, Strohschein had for years represented the two companies were the same, including by each of the following:

a.     Agreeing that the parties to the August 15, 2014 addendum to the 2014 Service Center Agreement were listed as WCR, Incorporated and Western Canada Plate Heat Exchanger Ltd., which upon information and belief is a combination of WCPE and WCHE and is actually a non-existent company.

b.     A subject line for the email sent from Earl Strohschein to WCR containing the signed Current Service Center Agreement was entitled: "RE: 2017 WCR, WCHE Licensee Agreement."

56.     In the Litigation, WCPE also took the untenable position that WCHE was not jointly responsible with WCPE for a contract entered into for customized plate heat exchangers that was subsequently cancelled.

57.     WCHE was not authorized to use the WCR name or represent itself as an authorized distributor for WCR if it was not a party to the Service Center Agreement.

**F.      Earl Strohschein Operated WCHE and WCPE as a Single Business and WCHE is the Alter Ego of WCPE**

58.      Earl Strohschein has consistently and repeatedly held out WCHE as the authorized distributor of WCR in Western Canada as the following examples demonstrate:

a.      Strohschein promoted himself using the following business card with the WCR logo on it and the name of WCHE:



b.      Strohschein had both the WCPE and WCHE websites advertise that WCHE was "an authorized distributor of WCR Heat Exchangers."

c.      Strohschein represented that WCHE was the authorized licensee of WCR in Western Canada and that WCHE was able to provide WCR products to prospective customers.  Specifically, in March 2017, Earl Strohschein wrote an email to a prospective customer using his WCHE email signature that contained the following representations:

It very nice to talk to you, as mentioned we are the licensee for WCR in Western Canada [*sic*] … As discussed we are able to provide you with WCR made gaskets …

      d.     Earl Strohschein approved sales material being sent to a customer that represented "Western Canada Heat Exchanger is the authorized distributor for WCR in Western Canada."

      e.     On March 20, 2018, Earl Strohschein wrote to a customer confirming "WCHE is an authorized distributor for West Coast Regasketing (WCR)."

59. All of the foregoing representations, among others, were made for the purpose of trading on the good name of WCR and gaining the benefit of the Service Center Agreements entered into between WCPE and WCR while not agreeing to any of the obligations under the Service Center Agreements, including the Current Service Center Agreement.

60. In addition to misrepresenting WCHE's status as it relates to WCR, Earl Strohschein also caused the two companies to comingle assets such that invoices from WCR for goods sold under the Service Center Agreements to WCPE were paid by WCHE and vice versa.

61. WCHE shares the same ownership, same employees and, upon information and belief, the same corporate officers with WCPE.

62. WCHE engages in the same business enterprise as WCPE, as both companies purchase, sell, and service plate heat exchanger-related products and complete the same jobs.

63. WCHE and WCPE utilize the same address, phone lines, and email server and use the same assets/equipment in the conduct of their business.

64.     WCHE was operated in such a manner, and with exclusive control over WCPE, that WCPE had no separate mind, will or existence of its own, rendering WCHE the alter ego of WCPE such that liability may be imposed upon WCHE for all liabilities of WCPE to WCR.

**G.     The Conduct of Earl Strohschein Justifies Piercing the Corporate Veil of WCHE and WCPE**

65.     Earl Strohschein exercised complete control over WCHE and WCPE such that the three were fundamentally indistinguishable, and without separate minds, wills or existence of their own.

66.     Strohschein's exercise of complete control and the deceptive nature in which he used it is established by, among other things, the following:

a.      The creation of two companies with nearly identical names being used to sell and purchase the same goods in the same markets from the same supplier to sell to the same customers;

b.      The failure to observe corporate formalities as evidenced by the interchangeable communications from Strohschein using WCPE, WCHE, or both of them, when dealing with WCR and customers;

c.      The diversion of corporate opportunities that belonged to WCPE to WCHE;

d.      The use of WCHE as a mere façade for the individual undertakings of Earl Strohschein such as Strohschein's April 17, 2017 letter;

      e.      Holding WCHE out to be liable for the obligations of WCPE and then refusing to accept the liability of WCHE for the obligations of WCPE under the Service Center Agreements;

      f.      Allowing WCHE to utilize the benefits of the Service Center Agreements and then attempting to shield WCHE from liability for the obligations under the Service Center Agreements;

      g.      Having Earl Strohschein act in sole control of WCPE and WCHE so that he was able to completely dominate them.

67. Strohschein used WCHE and WCPE to engage in fraudulent and other illegal or unlawful acts. As discussed more fully above, Strohschein fraudulently represented certain facts in his letter dated to WCR using WCHE letterhead that was made to induce the continuing contractual obligations of WCPE. In addition, Strohschein fraudulently represented to WCR that WCPE would purchase all of its plate heat exchanger parts from WCR under the Current Service Center Agreement but then used WCHE to avoid that obligation.

68. Strohschein's control over WCPE and WCHE were used to commit these fraudulent, and other illegal and unlawful acts.

69. WCR was damaged as a result of Strohschein's control over WCPE and WCHE and his deceptive and fraudulent use of them to deprive WCR of sales and the ability to have another, honest, distributor in the territory such that maintaining the corporate formalities would work an injustice upon WCR.

70.    This Court should therefore disregard WCPE's and WCHE's corporate status, pierce the corporate veil of WCPE and WCHE, and impose personal liability upon Earl Strohschein for all corporate liabilities of WCPE and WCHE.

**FIRST CLAIM FOR RELIEF**
**WCR v. Earl Strohschein**
**(Fraud)**

71.    The foregoing Paragraphs 1 through 70 of this Complaint are incorporated by reference as if fully set forth herein verbatim.

72.    Earl Strohschein falsely represented that WCPE had not violated or attempted to circumvent the Service Center Agreements when he met with the President and Vice President of WCR in Las Vegas on January 31, 2017.

73.    Earl Strohschein falsely represented in the April 17, 2017 letter sent to WCR in Ohio that the lower level of purchases being made from WCR were the result of market forces and a rogue employee who had made unauthorized purchases from a supplier other than WCR.

74.    The statements made by Earl Strohschein on January 31 and April 17, 2017 were false.

75.    In addition, and as more fully set out above, when entering into the Current Service Center Agreement Strohschein falsely represented that WCPE would purchase all of its requirements for plate heat exchangers and related parts from WCR.

76.    In addition, and as more fully set our above, when entering into the Current Service Center Agreement Strohschein falsely represented that no one who owned an interest in WCPE would be involved in a company that competed in this business yet he

was already using WCHE to compete, and he had caused Salarix to be formed to circumvent the restrictions on him individually.

77. Earl Strohschein made the foregoing representations knowingly and for the purpose of inducing WCR to enter into the Current Service Center Agreement and to continue to sell goods to Strohschein's companies.

78. WCR did justifiably rely on the foregoing material representations when entering into the Current Service Center Agreement and in continuing to sell goods to Strohschein's companies.

79. The misrepresentations, omissions and concealments by Strohschein that are described herein were intended to mislead WCR as described above and were, in addition, part of a larger fraudulent scheme by Strohschein to keep WCR from locating another distributor in Western Canada and thereby competing with WCHE and WCPE, and for which the corporate veil of WCHE and WCPE should be pierced, rendering Strohschein personally liable

80. Strohschein's actions, inactions, false representations, and concealments, including as set forth above in the preceding Paragraphs, were made by him with actual malice, ill will, recklessness, willful and wanton conduct, and/or a total disregard for the rights of WCR.

81. WCR has been damaged by Strohschein's fraud in the form of lost sales that were directed by Strohschein to other companies; the failure to pay for goods received; and, the lost exclusivity WCR would have maintained in the territory.

82. WCR is entitled to a judgment against Earl Strohschein for compensatory damages resulting from his fraud, plus punitive damages, interest and attorney's fees.

## SECOND CLAIM FOR RELIEF
### WCR v. Western Canada Heat Exchanger
### (Fraud)

83.     The foregoing Paragraphs 1 through 82 of this Complaint are incorporated by reference as if fully set forth herein verbatim.

84.     As further described herein, WCHE falsely represented to WCR it was a party to the Service Center Agreements and falsely represented it would comply with the terms of the Current Service Center Agreement and falsely represented it would pay for goods provided by WCR.

85.     WCHE further falsely represented it was an authorized WCR distributor, and further concealed that it was purportedly a separate entity from WCPE.

86.     The representations by WCHE that it would comply with the Current Service Center Agreement were false and were made for the purpose of inducing WCR's reliance.

87.     The representations that WCHE would pay for the goods received from WCR were false and were made for the purpose of inducing WCR to provide goods to WCHE.

88.     WCR did justifiably rely on the false representations and concealments of WCHE.

89.     WCHE's actions, inactions, false representations, and concealments, including as set forth above in the preceding Paragraphs, were made by it with actual malice, ill will, recklessness, willful and wanton conduct, and/or a total disregard for the rights of WCR.

90.     WCR has been damaged as a result of WCHE's false representations as more fully described herein, including, among other things, by losing products sales in the territory and by WCHE not paying for goods that were ordered from WCR.

91.     WCR is entitled to a judgment against WCHE for damages resulting from WCHE's fraud, including actual damages, punitive damages, interest and attorney's fees.

### THIRD CLAIM FOR RELIEF
**WCR v. Western Canada Heat Exchanger**
**(Breach of Contract)**

92.     The foregoing Paragraphs 1 through 91 of this Complaint are incorporated by reference as if fully set forth herein verbatim.

93.     On June 29, 2018, WCHE placed three orders with WCR for custom manufactured heat exchangers in the amount of $46,821.00, $17,951.00 and $18,641.00, respectively.

94.     The heat exchangers were sold under WCR's standard terms and conditions of sale. Those terms and conditions of sale provide that custom orders are not cancellable and not returnable once accepted by WCR.

95.     The terms and conditions of sale are the same ones this Court has already found in the Litigation establish jurisdiction over WCPE.

96.     After WCR accepted the order and completed the design and manufacturing of the custom manufactured goods, WCHE attempted to cancel the orders.

97.     WCHE has failed and refused to pay for the cancelled orders.

98.     WCHE is in breach of the agreement between the parties.

99.     Plaintiff is entitled to a judgment against WCHE for compensatory damages resulting from WCHE's breach of the contract in the amount of $83,413.00, plus interest thereon and attorney's fees.

**FOURTH CLAIM FOR RELIEF**
**WCR v. Western Canada Heat Exchanger**
**(Reformation)**

100.    The foregoing Paragraphs 1 through 99 of this Complaint are incorporated by reference as if fully set forth herein verbatim.

101.    Beginning on July 1, 2010, WCR and WCPE entered into a series of service and distribution agreements that were renewed on a regular basis, ending with the Current Service Center Agreement.

102.    On or about May 25, 2012, Earl Strohschein directed the formation of WCHE and began conducting business under the Service Center Agreements entered into between WCR and WCPE as WCHE.

103.    As set out above in detail, Strohschein fraudulently used WCHE to obtain the benefit of the Service Center Agreements without the attendant liabilities or restrictions.

104.    WCHE used a deceptively similarly named company to induce WCR to believe that business dealings with WCHE were in fact business dealings with WCPE under the Service Center Agreements.

105.    Strohschein and WCHE's conduct when dealing with WCR induced WCR to believe WCHE was a party to the Current Service Center Agreements and was WCR's licensee in western Canada.

106.    Strohschein's fraudulent and inequitable conduct entitles WCR to have this Court reform the Service Center Agreements, including the Current Service Center Agreement, to reflect the actual course of conduct and course of dealings between and among WCR, WCHE, and WCPE. Once the Service Center Agreements are reformed to

add WCHE to the Service Center Agreements, WCR is entitled to have the Court enter a judgment against WCHE for compensatory damages in WCR's favor in amounts to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### WCR v. Earl Strohschein and Western Canada Heat Exchanger
### (Unjust Enrichment)

107.    The foregoing Paragraphs 1 through 106 of this Complaint are incorporated by reference as if fully set forth herein verbatim.

108.    WCR brings this claim for unjust enrichment in the event there is a finding there was no contract between WCR and WCHE.

109.    Earl Strohschein used the good name, trademarks and reputation of WCR to promote his own business and that of WCHE.

110.    WCR conferred upon WCHE benefits, such as discounts on plate heat exchanger parts and accessories, meant only for the counter-party of a Service Center Agreement, which Earl Strohschein knowingly caused WCHE to accept and by which he himself directly benefited, and for which the corporate veil of WCHE should be pierced, rendering Strohschein personally liable.

111.    The profits made by Earl Strohschein, WCHE, or both of them from trading on the good name of WCR belongs to WCR.

112.    Allowing Earl Strohschein, WCHE, or both of them to retain the profits they made from trading on the good name of WCR would unjustly enrich them.

**WHEREFORE**, Plaintiff WCR, Incorporated, complaining of Defendants Western Canada Heat Exchanger, Ltd. and Earl Strohschein, respectfully prays this Court for the following relief:

1.      That Plaintiff have and recover the monetary relief and other remedies sought in this Complaint, including compensatory damages in an amount in excess of $75,000, plus punitive damages, attorney's fees, interest, expenses, and costs of this action; and

2.      That the Court grant Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

*s/ R. Leland Evans*
R. Leland Evans (OH0006833)
Richard J. Silk (OH0074111)
Dickie, McCamey & Chilcote, P.C.
250 Civic Center Drive, Suite 280
Columbus, OH 43215-5086
Tel: 614-258-6000
Fax: 888-811-7144
revans@dmclaw.com
rsilk@dmclaw.com
*Trial Attorneys for Plaintiff*

Peter A. Santos
Application to appear
*pro hac vice* to be submitted

NEXSEN PRUET, PLLC
15th Floor
227 West Trade Street
Charlotte, NC 28202
PSantos@nexsenpruet.com

*Attorneys for Plaintiff WCR, Incorporated*

Dated:  April 15, 2020

## **JURY DEMAND**

Defendant requests that this cause be heard before a jury.


<u>s/ R. Leland Evans</u>
R. Leland Evans (OH0006833)

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Complaint with the Clerk of the

Court using the CM/ECF system on April 15, 2020.

_____

s/ R. Leland Evans
R. Leland Evans (OH0006833)
Richard J. Silk (OH0074111)
Dickie, McCamey & Chilcote, P.C.
250 Civic Center Drive
Suite 280
Columbus, OH 43215-5086
Tel: 614-258-6000
Fax: 888-811-7144
revans@dmclaw.com
rsilk@dmclaw.com
*Trial Attorneys for Plaintiff*
Peter A. Santos
Application to appear
*pro hac vice* to be submitted

NEXSEN PRUET, PLLC
15th Floor
227 West Trade Street
Charlotte, NC 28202
PSantos@nexsenpruet.com

*Attorneys for Plaintiff WCR, Incorporated*

10260232.1